## PEOPLE v McDANIEL

1. CRIMINAL LAW—EVIDENCE—IDENTIFICATION—PREJUDICE.

   A defendant's contention for the first time in a motion for a new trial that his incourt identification which was based on an out-of-court photographic identification was impermissibly suggestive and improper because the defendant's picture had writing on the back while most of the other photos did not was without merit, where the witness had testified that she did not look at the back of any of the pictures, she positively identified the defendant at trial, defense counsel had conducted a thorough cross-examination of the witness of the identification issue, and the facts relating to the out-of-court identification showed that proper procedures were followed by the police; it is for the jury to decide whether to credit or reject a witness's identification testimony.

2. CRIMINAL LAW—EVIDENCE—IDENTIFICATION—APPEAL AND ERROR—PRESERVING QUESTION.

   A defendant's failure timely to raise the issue of whether a witness's in-court identification of the defendant was proper does not preclude appellate review.

3. CRIMINAL LAW—EVIDENCE—IDENTIFICATION—MISIDENTIFICATION.

   Each case of photographic identification must be considered on its own facts, and convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

4. FORGERY—UTTERING AND PUBLISHING—EVIDENCE—SUPPRESSION—HANDWRITING SAMPLES—FAIR TRIAL.

   A defendant's contention that in a trial for uttering and publishing a counterfeit check the prosecutor's failure to disclose to the defense that the handwriting samples taken from defend-

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 21 Am Jur 2d, Criminal Law §§ 368, 369.
[2] 5 Am Jur 2d, Appeal and Error § 545.
[4, 5] 36 Am Jur 2d, Forgery §§ 44–49.

ant did not match the handwriting on the check resulted in the denial of defendant's right to a fair trial was without merit where the police had not disclosed this fact to the prosecutor, because the prosecution did not suppress any evidence where it did not have that item of evidence in its possession nor did it have knowledge of that evidence.

5. FORGERY—UTTERING AND PUBLISHING.

Who committed the forgery of an instrument is immaterial upon a prosecution for uttering and publishing provided the defendant knowingly attempted to pass it upon some person as genuine.

Appeal from Bay, Leon R. Dardas, J. Submitted Division 3 December 13, 1972, at Lansing. (Docket No. 12582.) Decided June 25, 1973. Leave to appeal applied for.

James L. McDaniel was convicted of uttering and publishing a counterfeit check. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Eugene C. Penzien,* Prosecuting Attorney, and *George B. Mullison,* Assistant Prosecuting Attorney, for the people.

*James J. Carras,* for defendant on appeal.

Before: FITZGERALD, P. J., and McGREGOR and TARGONSKI,* JJ.

McGREGOR, J. Defendant was convicted of uttering and publishing a counterfeit check, contrary to MCLA 750.249; MSA 28.446, by a jury in circuit court on July 2, 1971; he was sentenced on August 9, 1971, to a term of from 1-1/2 to 14 years in prison.

Defendant allegedly uttered and published a forged or false check on August 23, 1969; the

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

check was presented to an employee of the Sears, Roebuck & Company, at the store. The check was dated August 22, 1969, payable to the order of one Leon Dandridge in the amount of $207, drawn on the Carrolton-Zilwaukee VFW Post account of a Saginaw bank. Several days later, a detective of the Bay City Police Department went to the Sears store and obtained a description from the employee of the man who cashed the check. He later returned to the store with a group of photographs and left them for the employee's examination, with instructions that she was to indicate in writing the number of the photograph, if any, which answered the description she had given. When the detective returned the following day, the employee had picked out one of the pictures, the same being a picture of the defendant. A warrant for his arrest was then obtained.

At trial, the employee identified the defendant as the man who had cashed the check. The prosecutor showed her the array of photographs from which she had previously picked the defendant, and she identified the one she had selected; it was a picture of the defendant.

On cross-examination, the detective testified that two pictures in the group, one of which was of the defendant, had handwriting on the back. However, the Sears employee had already testified that she did not look at the back of the defendant's picture. The detective also testified that handwriting samples taken from the defendant did not match with the handwriting on the check. This fact was never communicated to the prosecutor.

Following the testimony of the detective, and out of the presence of the jury, the defendant made a motion for a directed verdict of acquittal, based *inter alia* on the fact that the handwriting

samples did not match that on the check. The court denied this motion, stating that the jury could find the defendant guilty of the offense even if the handwriting did not match, because the jury could choose to disbelieve the employee and her contention that she had seen the defendant endorse the check, and could believe her identification of the defendant.

Defendant's motion for a new trial was denied. On appeal, he raises numerous allegations of error.

The first issue we consider is whether the employee's in-court identification of the defendant was improper. Defendant contends that the out-of-court photographic identification was impermissibly suggestive because defendant's picture had writing on the back. However, the employee testified that she did not look at the back of any of the pictures. The employee positively identified the defendant at trial; she also related the facts of the photographic identification. At defendant's request, the pictures were introduced into evidence and the defense counsel conducted a thorough cross-examination of the employee on the identification issue. Nowhere did the defense counsel object to the in-court identification as being tainted by the out-of-court identification until his motion for a new trial.

Defendant's failure timely to raise the issue does not preclude appellate review. *People v Limon,* 4 Mich App 440 (1966); *People v Schumacher,* 29 Mich App 594 (1971), remanded on other grounds, 384 Mich 831 (1971); *People v James Jackson* (Docket No. 11627, decided June 28, 1972 [unreported]). The test for setting aside a photographic identification is set out in *Simmons v United States,* 390 US 377, 384; 88 S Ct 967, 971; 19 L Ed 2d 1247, 1253 (1968):

"[W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground *only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.*"

The situation here is very similar to that in *People v Council,* 36 Mich App 682, 685 (1971), where this Court held:

"In the present case, the pretrial photographic identification procedure, scrutinized in light of the totality of the surrounding circumstances, does not give rise to substantial likelihood of irreparable misidentification. Because the procedure was not so unduly prejudicial as to wholly taint the conviction of the defendant, this Court finds no merit in this contention by defendant."

Likewise, in the instant case, the identification procedure was proper and defendant suffered no prejudice. Furthermore, it was for the jury to decide whether to credit or reject the employee's identification testimony. *People v Charles Williams,* 36 Mich App 195 (1971).

The next issue is whether the failure of the prosecution, even though unintentional, to disclose to the defense that handwriting samples taken from defendant did not match the handwriting on the check resulted in the denial of defendant's right to a fair trial.

At the preliminary examination, defendant testified that after he was arrested, the police took handwriting samples from him. Defense counsel asked to see those samples, but the prosecutor stated that his office had none.

At trial, the Sears employee testified that the check was signed in her presence; on cross-exami-

nation of the detective, it was discovered that the handwriting samples taken from this defendant did not match with the handwriting on the forged check. *The detective stated that he did not think that this fact had been disclosed to the prosecutor.* The jury was excused and the defendant moved for a directed verdict. The motion was denied. The prosecutor requested a recess until the following week so he could investigate the handwriting report. The defendant opposed this motion and the motion was denied.

In his final argument, the prosecutor stated that the Sears employee must have been mistaken when she testified that the defendant signed the check in her presence. However, he prefaced his argument by saying that the arguments by counsel are not evidence in the case. Defense counsel countered in his argument by stating that, if the employee were mistaken as to whether the person signed in her presence, she could be mistaken as to the crucial question of identity.

In *Brady v Maryland,* 373 US 83, 87; 83 S Ct 1194, 1196–1197; 10 L Ed 2d 215, 218 (1963), the Court held:

" \* \* \* that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

In *Moore v Illinois,* 408 US 786, 794, 795; 92 S Ct 2562, 2568; 33 L Ed 2d 706, 713 (1972), the Court, in discussing *Brady,* stated:

"The heart of the holding in Brady is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punish-

ment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence. * * *

"The record discloses, as the Illinois court states, 42 Ill 2d, at 80, 246 NE2d, at 304, that the prosecutor at the trial submitted his entire file to the defense. The prosecutor, however, has no recollection that Sanders' statement was in the file. The statement, therefore, either was in that file and not noted by the defense *or it was not in the possession of the prosecution at the trial.*" (Emphasis added.)

The clear implication of *Moore* is that the prosecution cannot suppress evidence which it does not possess or of which it has no knowledge. The Court stated:

*"We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case."* (Emphasis added.) 408 US at 795; 92 S Ct at 2568; 33 L Ed 2d at 713.

On the basis of the record before us, we conclude that the prosecution herein did not suppress any evidence, as they did not have that item of evidence in their possession nor did they have knowledge of that evidence.

Furthermore, there cannot be reversible error, where the evidence was not material to the question of the defendant's guilt or innocence of the crime of uttering and publishing. The evidence related to the question of whether the defendant endorsed the check in the presence of the employee. The employee testified that the defendant endorsed the check in her presence. The police determined that samples of the defendant's handwriting did not match the handwriting on the

check. While this discrepancy would be material in a prosecution for forgery, it is not material to the question of guilt in a prosecution for uttering and publishing.

"Upon a prosecution for uttering and publishing, it is immaterial who committed the forgery of the instrument, provided the defendant knowingly attempted to pass it upon some person as genuine." 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1503, p 1881.

The only use which could be made of the handwriting samples would be in an attempt to impeach the credibility of the employee. This was done by the defense. The fact that the jury chose to believe the employee's testimony that defendant was the person who passed the check is not contradicted by the evidence that defendant's handwriting did not match that found on the check.

Another indication that the "unknown evidence" was not prejudicial to defendant's right to a fair trial is the fact that the defendant opposed the prosecution's request for a recess so that he (the prosecutor) could examine the handwriting samples. Defendant clearly did not want or need more time to examine the evidence for use in his defense.

A careful examination of the transcript, record and briefs reveals that defendant's other allegations of error are without merit. There is no reversible error.

Affirmed.

Fitzgerald, P. J., concurred.

Targonski, J., did not participate.